(No. 11045.—Judgment affirmed.)

BRUNO ZICCARELLI, Appellee, *vs.* HENRY STUCKART, County Collector, Appellant.

*Opinion filed February 21, 1917.*

1. TAXES—*section 227 of the Revenue act does not deprive the owner of property forfeited to State of his constitutional right of redemption.* Section 227 of the Revenue act, providing for the purchase, by a stranger, of land forfeited to the State for delinquent taxes, does not violate section 5 of article 9 of the constitution, guaranteeing to the owner of the property the right of redemption, as such section expressly allows the owner to make redemption the same as in case of a regular tax sale.

2. SAME—*section 227 of the Revenue act does not conflict with section 253 of same act.* One of the objects of section 253 of the Revenue act is to provide a method of disposing of property forfeited to the State for delinquent taxes when no redemption or sale has been had under section 227 and the taxes on the forfeited property have not been paid for two years, and its provisions do not conflict with said section 227, which provides a speedy and inexpensive method of redemption or sale without resorting to the chancery proceedings provided for in section 253.

3. SAME—*section 227 of Revenue act does not violate section 4 of article 9 of the constitution, prohibiting sale for taxes without a court order or judgment.* Section 227 of the Revenue act, provid-

ing for the sale of property forfeited to the State for delinquent taxes, does not violate section 4 of article 9 of the constitution, prohibiting a sale for taxes without an order or judgment of a court of record, as such judgment must necessarily have been obtained before the property was forfeited to the State.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

MACLAY HOYNE, State's Attorney, (AUGUSTUS KELLY, of counsel,) for appellant.

JOHN H. KANE, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellee, Bruno Ziccarelli, filed a petition for *mandamus* in the circuit court of Cook county against appellant, Henry Stuckart, county collector of that county, to compel him, as such county collector, to receive the amount due for taxes, special assessments, penalities, interest, costs, etc., on lots 6 and 11, in block 5, in Western addition of a subdivision of the west half of the southeast quarter of section 15, township 39, north, range 12, in Cook county, which lots had been forfeited to the State of Illinois for non-payment of taxes for the year 1914. The proceeding is based on the provisions of section 227 of the Revenue act. (Hurd's Stat. 1916, p. 2203.) Appellant answered the petition, admitting the material allegations thereof. The cause was heard by the court on the petition and answer, a judgment was rendered in favor of appellee and a writ of *mandamus* ordered to be issued as prayed. This appeal followed.

The material facts are not disputed. The taxes for the year 1914 were not paid on said lots and the same were forfeited to the State for non-payment of such taxes and so remained forfeited on March 22, 1916, at which time appellee applied to the county clerk of Cook county to pur-

chase the same and secured from him an order on the county collector directing him to receive from appellee the amount due on said lots, which amount was set forth in the order, in strict compliance with section 227 of the Revenue act. Appellee presented this order to the county collector, to whom he stated he desired to purchase such lots and tendered the sum of $46.94, the amount due thereon, and offered to pay any additional amount which the collector might claim to be due on said lots. At the time of making the application appellee was not the owner of said lots. At various times since that time he has requested the county collector to receive the amount so due on said lots and issue to him a certificate, as provided by said section 227, which the county collector refused to do. Appellee also offered in his petition to bring into court the amount so tendered, and asked leave to pay the same to the clerk of the court for the use of said county collector, and prayed that a writ of *mandamus* issue directing the county collector to receive the sum of $46.94, or such other amount as he may deem due, under the order of the county clerk, and to give appellee a duplicate receipt, setting forth a description of the property and the amount received therefor, etc., as required by section 227 of the Revenue act.

Appellant by his answer admitted the foregoing facts but alleged said section 227 is invalid for the reason that it conflicts with the provisions of sections 4 and 5 of article 9 of the constitution. Section 4 provides for a return to be made to some general officer of the county of all unpaid taxes and assessments who has authority to receive State and county taxes, and that no such property shall be sold by such officer except upon the order or judgment of some court of record. Section 5 provides that the right of redemption from all sales of real estate for non-payment of taxes or special assessments shall exist in favor of the owners of such real estate for a period of not less than two years. The answer also alleges that said section deprives

the owner of his rights under sections 202 and 210 of the
Revenue act, and in so far as it relates to the purchase or
sale of real estate forfeited to the State is repealed by the
provisions of section 253 of such act.

The only question we are required to consider on this
record is the validity of section 227 of the Revenue act. A
determination of this question involves a consideration of
the various provisions of said act with reference to the sale
of real estate for the non-payment of taxes, in order to as-
certain the object and purpose of section 227 in its relation
to the general plan or scheme of such act.

By sections 170 and 172 provision is made for the re-
turn by the town or district collector of all delinquent per-
sonal and real estate taxes to the county collector. By sec-
tions 182 and 183 provision is made for the advertisement
of such lands and lots for such delinquent taxes and special
assessments and notice of the intended application for judg-
ment and order for sale of the same. By section 191 pro-
vision is made for a hearing on such application in the
county court, a court of record, and for the order of judg-
ment and sale to be entered in such proceeding. By the
subsequent sections provision is made for advertising the
delinquent property for sale, the sale of the same and the
keeping of the proper record of such proceedings. By sec-
tion 202 it is provided that the person at such sale offering
to pay the amount due on each tract or lot for the least per-
centage as penalty shall be the purchaser of such tract or
lot, provided no bid shall be accepted for a penalty exceed-
ing twenty-five per cent of the amount of such tax or spe-
cial assessment. By section 207 provision is made for a
certificate of purchase to be issued by the county clerk to
the purchaser of any lands or lots sold at such sale, which
certificate is to be countersigned by the county collector, and
which shall describe the land or lots sold, the date of such
sale, the amount of taxes, special assessments, interest and
costs for which sold, and state that payment has been made

therefor. By section 210 provision is made for a redemption of the property sold by the owner at any time within two years from the date of such sale and the procedure to be followed in making such redemption. By sections 216, 217 and 219 provision is made for the procedure to be followed by the purchaser of real estate at such tax sale in order to secure a tax title to the property in case no redemption is made, as provided by section 210 of such act.

By none of the preceding sections is any provision made for the contingency of there being no bidders for any piece or parcel of real estate offered at such tax sale. By section 203 this contingency is provided for, as it provides that "every tract or lot so offered at public sale, and not sold for want of bidders, shall be forfeited to the State of Illinois," and that if the county judge, county clerk and county treasurer shall certify that the tax on the forfeited land equals or exceeds the actual value of such land, the same, after giving ten days' notice of the time and place of such sale, shall be offered for sale to the highest bidder and sold and a certificate of purchase issued to the purchaser at such sale as in case of other sales under the act, and that the county collector shall receive credit, in his settlement with the custodian of the several funds for which such tax is levied, for the amount not realized by such sale. So far, however, no provision is made by any section of the act for a redemption by the owner of his property forfeited to the State or the procedure to be followed in making such redemption, or for a subsequent sale of the forfeited property by the State in order to realize the amount due thereon as such forfeited property. By section 253, however, provision is made for a foreclosure of the tax lien on such real estate in a court of chancery by a proceeding in the name of the People of the State of Illinois against such real estate, "whenever the taxes for two or more years, upon the same description of property, shall have been forfeited to the State," etc., but nowhere is provision made for a dis-

position of such property by the State short of two years,
except in section 227, which was enacted to meet this contin-
gency, and which provides a quick and inexpensive method
of redemption from the State, or other disposition of such
forfeited property by the State, without resorting to the
chancery proceedings provided for by section 253 of the act,
and which section 227 reads as follows: "If any person
shall desire to redeem or purchase any tract of land or lot
forfeited to the State, he shall apply to the county clerk,
who shall issue his order to the county collector, directing
him to receive from said person the amount due on said
tract or lot, which shall in no case be less than ten per cent
on all taxes heretofore forfeited, and twenty-five per cent
on all taxes hereafter levied and forfeited, in addition to
the tax, special assessments, interest and printer's fees due
thereon, particularly describing the property and setting
forth the amount due; and upon presentation of said order
to the county collector, he shall receive said amount and
give the person duplicate receipts therefor, setting forth a
description of the property and the amount received—one
of which shall be countersigned by the county clerk, and
when so countersigned, shall be evidence of the redemption
or sale of the property therein described, as the case may
be, but no such receipt shall be valid until it is countersigned
by the county clerk. The other receipt shall be filed by the
county clerk in his office, and said clerk shall make a proper
entry of the redemption or sale of the property on the books
in his office, and charge the amount of the redemption or
sale money to the county collector. In cases of sales, the
collector and clerk shall make the receipt in the form of a
certificate of purchase. Property purchased under this sec-
tion shall be subject to redemption, notice, etc., the same as
if sold at regular public tax sale."

Under the provisions of this section two methods are
provided for the disposition of such forfeited property by
the State. One is by a redemption of the property by the

property owner; the other by a purchase of the interest of the State in such property by another than the property owner. When the property owner desires to redeem his property he may do so before a sale made as therein provided by applying to the county clerk and securing from him an order on the county collector to receive the amount due on such property and paying such amount to the collector and receiving from him a duplicate receipt showing the payment of such tax and filing such receipt with the county clerk, who then makes the proper entry of such redemption on the books in his office. If some other person desires to purchase the property before a redemption is made he may do so by applying to the county clerk to make such purchase and following the procedure above pointed out to be taken by the property owner in making redemption and filing the receipt given him, which in that instance is in the form of a "certificate of purchase," and filing the same with the county clerk, who then makes the proper entry of such sale on the books in his office. With respect to the form of the receipt to be issued in such case and the rights of the purchaser at such sale the section provides: "In cases of sales, the collector and clerk shall make the receipt in the form of a certificate of purchase. Property purchased under this section shall be subject to redemption, notice, etc., the same as if sold at regular public tax sale." From this it follows that the purchaser of the property at such sale acquires the same rights and stands in exactly the same position with respect to the property he would had he become a purchaser of the property at the prior public tax sale, and instead of depriving the property owner of his right of redemption as secured to him by section 5 of article 9 of the constitution and as provided by section 210 of the Revenue act, this section expressly provides a means by which the property owner may make such redemption after his property has been forfeited to the State, and preserves this right of redemption, in case of a sale of the State's in-

terest therein, by allowing him to make a redemption from such purchaser the same as if the property had been sold at public sale, so that instead of this statute being in conflict with section 5 of the constitution and with section 210 of the Revenue act it is in perfect harmony with them, is in a measure supplementary to them, and as such is a valid exercise of legislative power. Neither is it repealed by section 253, which provides for a foreclosure of the tax lien on such property by a proceeding in a court of chancery in the name of the People of the State of Illinois, in cases in which the taxes on such forfeited property have not been paid for two years. As pointed out above, one of the objects of this section was to provide a method of disposing of such forfeited property when no redemption or sale had been made pursuant to the provisions of section 227, and its provisions therefore do not conflict with the provisions of such section.

As to the further contention that section 227 deprives the property owner of his property without a judgment and order of sale of a court of record, as required by section 4 of article 9 of the constitution, said section 4 provides that "in all cases where it may be necessary to sell real estate for the non-payment of taxes or special assessments for State, county, municipal or other purposes, * * * there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record." This constitutional provision, while it requires the judgment or order of a court of record to authorize the sale of such property, does not undertake to prescribe how such sale shall be conducted or made after such judgment or order has been entered. That matter is left entirely in the hands of the legislature, so that when the property has once been returned delinquent, duly advertised and an application for judgment made and judgment and order of sale entered by a court of record, the requirements of this section of the constitution are complied with.

277 – 3

This was done in the present case and must be done in all cases before there can be a forfeiture of real property to the State for the non-payment of taxes under our statutes. (*People* v. *Henckler,* 137 Ill. 580; Revenue law, sec. 203, *supra.*) When these necessary steps have been taken and the property offered for sale but not sold for want of bidders and declared forfeited to the State the requirements of the constitution have been complied with, and it rests in the discretion of the legislature to provide the means by which such forfeited property may subsequently be disposed of by the State. The object of section 227 was to provide this means and we think was well adapted to that end. It is not subject to the constitutional objections urged against it and must be sustained as a valid exercise of legislative power.

It is admitted the property in question was duly returned delinquent, advertised as such, application for judgment and order of sale made and such judgment and order entered and the property ordered sold; also that the same was thereafter duly advertised and offered for sale and forfeited to the State for want of bidders at such sale; also that appellee has in all respects complied with the provisions of section 227 of such act. Under these admissions appellee had the right to become a purchaser of such property and to have a receipt issued to him by the county collector in the form of a certificate of purchase showing that he had purchased such property. When such certificate was refused he had a right to enforce its issuance by *mandamus.* The lower court, by the writ issued, ordered such certificate to issue, and its judgment in the premises was right and will be affirmed.                    *Judgment affirmed.*